UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MANUEL QUINONES,

                                       Plaintiff,        <u>MEMORANDUM AND ORDER</u>
                                                                       Case No. 06-cv-1626 (TLM) (ARL)
      -against-

ATLANTIC HYUNDAI,

                                         Defendant
---------------------------------------------------------------X

**TUCKER L. MELANÇON, Senior United States District Judge:**

Before the Court are defendant Atlantic Hyundai's Motion for Summary Judgment [Rec. Doc. 39] and plaintiff Manuel Quinones' Memorandum in Opposition thereto [Rec. Doc. 49]. For the reasons that follow, defendant's Motion [Rec. Doc. 39] will be GRANTED IN PART and DENIED IN PART.

Defendant moves for summary judgment on plaintiff's Title VII discrimination claim, arguing that plaintiff cannot make out a prima facie case of discrimination and, assuming *arguendo* that he could, that he cannot show that defendant's articulated, legitimate nondiscriminatory reason for plaintiff's termination is mere pretext. Defendant also moves for summary judgment on plaintiff's defamation and unauthorized credit check claims; plaintiff consents to the dismissal of those claims, Pl. Mem. Opp. at 2, thus they will be dismissed by the Court but not addressed in this ruling.

**I.**     **Plaintiff's Title VII Claim**

    A.     Legal Framework for Title VII Claims

Race and national origin discrimination claims under Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e-2000e-17, are analyzed under the familiar three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* framework, a Title VII plaintiff must first proffer sufficient evidence to make out a prima facie case. *See Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir.2004). This burden is minimal and does not require specific evidence of discrimination. *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir.2006). If a plaintiff meets this burden, the defendant employer must then articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. A plaintiff must then provide evidence that the employer's explanation is not true, but rather a pretext for discrimination. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir.2001).

"The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). However, the Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where...the merits turn on a dispute as to the employer's intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir.2008).

B. Plaintiff's Prima Facie Case

A plaintiff's prima facie case of discrimination must consist of four elements: "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb*, 521 F.3d at 138. Plaintiff's burden at this stage is "de minimis," and the requirement of meeting it is "neither onerous,

2

nor intended to be rigid, mechanized, or ritualistic." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001) (internal quotation marks and citations omitted). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 142 (2000) (internal quotation marks omitted).

Defendant does not contest the first three elements of plaintiff's prima facie case; rather, they argue that plaintiff cannot establish the fourth element, i.e. that his termination occurred under circumstances giving rise to an inference of discrimination.

In establishing this fourth element, an employee may rely on evidence of discriminatory comments made to an employee by a supervisor who had influence in the decision-making process. *See Rose v. New York City Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (finding that sexist remarks attributed to an employee's supervisor were probative evidence that the employee's demotion was motivated by discriminatory animus). "The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." *Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 116 (2d Cir.2007) (emphasis added).

The affidavits submitted in opposition to defendant's Motion contain admissible evidence tending to show that Daniel Toomey, the manager who ultimately fired plaintiff, both made and tolerated remarks evoking a discriminatory attitude toward Puerto Ricans and Hispanics. Plaintiff claims that Toomey once "grabbed [him] hard around the ear and pulled [him] off the podium, yelling 'no Puerto Rican is allowed at the podium.'" Quinones Aff. ¶ 12. On another occasion, plaintiff alleges, Toomey, referring to a person of Mexican origin, "turned to [plaintiff] and said, 'here comes one of your kind'...then said 'they're all spics, they're all the same.'" *Id.* at ¶ 13.

Former employee Ricardo Aviles claims that "the white employees often told Puerto Rican jokes in front of management, Daniel Toomey, and the employees." Aviles Aff. ¶ 3. Former employee Art Norvell claims that it was "common practice in the dealership for the white employees to make ethnic jokes," and that "Daniel Toomey was aware of all of this and did nothing." Norvell Aff. ¶ 3-4.

Drawing all permissible inferences in plaintiff's favor, i.e. assuming Daniel Toomey, the manager who fired plaintiff, made and sanctioned racial and ethnic insults on a regular basis, plaintiff has met his minimal initial burden with respect to the "circumstances giving rise to an inference of discrimination," and thus established a prima facie case.

Defendant purports to point to several cases in which a court granted summary judgment in favor of an employer "based on the 'same actor inference,'" Def. Mem. 8, which applies where the same individual both hires and fires a plaintiff. But in each of those cases that inference was merely one factor weighing against the plaintiff's case. *See, e.g., Newsom-Lang v. Warren Intern., Inc.*, 249 F.Supp.2d 292, 303 (S.D.N.Y.2003) (affirming that a "case-by-case approach" is required even where a same actor inference can be drawn); *Kemp v. A & J Produce Corp.*, 2005 U.S. Dist. LEXIS 45731, at *22 (E.D.N.Y.2005) ("Though not sufficient on its own to support summary judgment in this case, the 'same actor inference' further weakens [plaintiff's] circumstantial case for discriminatory intent." (internal citation omitted)). *See also Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir.2000) (listing four reasons why plaintiff's case for age discrimination was too weak to survive summary judgment, with its "same actor inference" as the third). Indeed, the fact that Daniel Toomey hired plaintiff on multiple occasions, and promoted plaintiff to Sales Manager, weighs against plaintiff's circumstantial evidence of discrimination. *See Grady v. Affiliated Central, Inc.*,

4

130 F.3d 553, 560 (2d Cir.1997). But it does not in itself negate plaintiff's prima facie case.

C. Defendant's Stated Nondiscriminatory Reason

Once a plaintiff has made out a prima facie case of discrimination, the burden shifts to the defendant to produce a "legitimate, nondiscriminatory reason" for the challenged employment decision. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

To that end, defendant claims that plaintiff was fired for insubordination and engaging in threatening behavior. It points to plaintiff's admission that he called Richard Palmieri, a superior, "a fucking liar" and "a fucking piece of shit," and told Palmieri that Palmieri "fucked up." *See* Quinones Dep. 156. It also alleges that plaintiff threatened physical violence against Palmieri. *See* Def. 56.1 ¶ 28 ("[Plaintiff] told Palmieri 'you fat fuck, I am going to toss you around the lot'"). These assertions permit the conclusion that defendant's reason for terminating plaintiff's employment was nondiscriminatory, and are therefore sufficient to shift the burden of persuasion back to the plaintiff.

D. Plaintiff's Rebuttal of Defendant's Stated Nondiscriminatory Reason

When a defendant has produced evidence of a nondiscriminatory reason, a plaintiff, to survive summary judgment, "must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir.2001).

Merely establishing that an employer's proffered reason is false is not enough; a plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason," *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original), but there is often a connection between the two, and a "factfinder's disbelief of the reasons put forward by the defendant

5

(particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Id.* at 511. "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (internal quotation marks omitted).

In this case, plaintiff presents evidence regarding the events leading to his termination that calls defendant's account of those events, and thereby defendant's reason for firing plaintiff, into question. First, defendant's sole basis for the allegation that plaintiff threatened physical violence against Palmieri is the affidavit of Gary Locercio, another employee, and not only does plaintiff dispute that he used any threatening language, but both plaintiff and former employee Jon Sbrocco claim that Locercio was not even at work on the day in question. Quinones Aff. ¶ 17; Sbrocco Aff. ¶ 4. In essence, there is a factual dispute as to whether defendant has put forth a fabricated account of an alleged threat as part of its stated basis for plaintiff's termination.

Second, plaintiff gives an account of his altercation with Palmieri by which Palmieri first harshly chastised plaintiff for making a business error that plaintiff in fact did not make, and did so loudly, publicly, and in vulgar language. Quinones Dep. 152-55 ("he gives me this number, and I look at him and said, Rich, how can you. He says don't worry about it, just write it up...[Then later he] says I didn't tell you to write it up at that number...and then [he] begins to verbally attack me...[he] says you are a fucking liar, you fucked up...[then he] starts lacing into me, in the showroom full of customers and other sales reps, calling me a fucking liar, I'm a fucking piece of shit and

6

everything in the book"); Quinones Aff. ¶ 18-19. Plaintiff claims that his alleged act of insubordination was simply an attempt to stand up for himself and set the record straight, and that he used language that mirrored the language directed at him. Quinones Dep. 156; Quinones Aff. ¶ 19. Taking the plaintiff's use of the terms "fucking liar," "fucking piece of shit," and "you fucked up" in the context of the entire encounter, defendant's contention that they amount to insubordination is squarely in dispute.

Finally, plaintiff and former employees Ricardo Aviles and Jon Sbrocco all claim that altercations like the one in question were common and unremarkable at Atlantic Hyundai, and were not regarded as acts of insubordination warranting disciplinary action. Quinones Aff. ¶ 16 ("The managers often yelled at the [salesmen] and if you were a minority the yelling often accompanied racial slurs. The [salesmen] often yelled back at the managers"); Aviles Aff. ¶ 10 ("as manager it was a regular occurrence to be cursed out by my employees. It was all part of the boiler room mentality. Such behavior was accepted and under Daniel Toomey it was not viewed as insubordination, especially if you were white."); Sbrocco Aff. ¶ 3 ("the managers often yelled at the salespersons using curse words and the salespersons often yelled back using the same foul language. No one was worried about getting fired for this or that management would deem it to be insubordinate.")

There is sufficient evidence in the record before the Court for plaintiff's claim to survive summary judgment. The disputed facts in this case must be resolved by a jury.

## II. Plaintiff's Other Claims

As plaintiff has consented to the dismissal of his claim for defamation and his claim arising from an alleged unauthorized credit check, Pl. Mem. Opp. at 2, the Court will dismiss those claims.

7

**III. Conclusion**

Based on the foregoing, it is

**ORDERED** that defendant Atlantic Hyundai's Motion for Summary Judgment [Rec. Doc. 39] is **GRANTED** with respect to plaintiff's claims for defamation and his claim arising from an alleged unauthorized credit check, and **DENIED** with respect to plaintiff's claim based on Title VII of the Civil Rights Act of 1964.

**SO ORDERED.**

                                                    _____
                                                    Tucker L. Melançon
                                                    United States District Judge

February 25, 2009
Brooklyn, NY